UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**RANDY MICHAEL DISHMON,**

    **Plaintiff,**

    vs.

    Case No. 2:16-cv-0054
    CHIEF JUDGE CRENSHAW
    Magistrate Judge King

**SOCIAL SECURITY ADMINISTRATION,**

    **Defendant.**

**To:** The Honorable Waverly D. Crenshaw, Jr., Chief Judge

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. This matter is before the Court on Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 12)("Motion for Judgment") and Brief in Support of Motion for Judgment on the Administrative Record (Doc. 13)("Brief in Support"), Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 14)("Response"), and the administrative record (Doc. No. 10).[1] For the following reasons, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. 12) be **GRANTED,** and that the matter be **REMANDED** to the Commissioner, pursuant to Sentence 6 of 42 U.S.C. § 405(g), for consideration of new and material evidence.

---

[1] Citations to pages in the Administrative Record will appear as "Tr. __."

1

## Introduction

Plaintiff filed his application for benefits on May 11, 2013, alleging that he has been disabled since December 14, 2012. Tr. 190. The application was denied initially and on reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ"). On May 18, 2015, Plaintiff, represented by counsel, appeared and testified at that hearing, as did Edward M. Smith, who testified as a vocational expert. Tr. 85-114. In a decision dated July 1, 2015, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act at any time from his alleged date of onset of disability to the date of the administrative decision. Tr. 67-79. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 17, 2016. Tr.1-4. In declining review, the Appeals Council noted the submission of additional medical evidence that was generated after the date of the ALJ's decision. However, the Appeals Council concluded that the new evidence "does not affect the decision about whether you were disabled beginning on or before" the date of the ALJ's decision. Tr. 2.

## The Findings and Conclusions of the ALJ

In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since December 14, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease; arthropathies; bilateral

2

Case 2:16-cv-00054   Document 16   Filed 10/31/17   Page 2 of 16 PageID #: 706

carpal tunnel syndrome; and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift and carry, push and pull 10 pounds occasionally and less than 10 pounds frequently, with frequent upper extremity pushing and pulling. With normal breaks in an eight-hour day, he can sit for six hours and stand and/or walk for a total of four hours; can never crouch or crawl; can occasionally balance, kneel and stoop; can frequently climb ramps, stairs, ladders, ropes and scaffolds; and with his bilateral upper extremities, he can frequently reach overhead, handle and finger.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 9, 1970 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 14, 2012, through the date of this decision (20 CFR 404.1520(g)).

Tr. 69-70, 77-79.

### Plaintiff's Claims

Plaintiff does not clearly articulate individual claims for review, but the Court has identified the following issues raised by him:

> The ALJ erred when he concluded that Plaintiff's spine disorder neither met nor equaled Listing 1.04;
>
> The ALJ erred by not securing a consultative examination;
>
> The ALJ erred in failing to give controlling weight to the opinion of Scott Hodges, D.O., Plaintiff's treating orthopedic neurosurgeon; in failing to properly evaluate the opinion of Chris S. Sewell, M.D., Plaintiff's primary care provider; and in giving improper weight to the opinion of Deborah Webster-Clair, M.D., a state agency reviewing physician;
>
> The ALJ erred in his assessment of Plaintiff's subjective complaints;
>
> The ALJ erred when he stated that there was no evidence of broken hardware in Plaintiff's cervical spine;
>
> The ALJ erred when he did not include Plaintiff's hearing loss in the hypothetical posed to the vocational expert;
>
> The decision of the ALJ is not supported by substantial evidence.

*See* Brief in Support (Doc. 13, PageID# 682-86). Plaintiff does not expressly address Sentence 6 of 42 U.S.C. § 405(g), which authorizes remand of an action for administrative consideration of new and material evidence. However, his Brief in Support, which summarizes new medical evidence and which asks that the matter be "reversed or remanded," *id.* (PageID# 689), may be fairly read as requesting that relief. Because, for the reasons stated *infra*, the undersigned concludes that remand of the action pursuant to Sentence 6 of 42

4

U.S.C. § 405(g) is appropriate, the undersigned will not consider the other issues raised in Plaintiff's Brief in Support.

## Summary of the Relevant Evidence

Plaintiff testified at the administrative hearing that he underwent a hemilaminectomy and frenectomy in June 2012 and a cervical fusion in December 2012. Tr. 92, 101. His pain increased after his surgeries and has prevented him from returning to work. Tr. 92, 102. Dr. Hodges, Plaintiff's treating neurosurgeon, has not authorized Plaintiff's return to work. Tr. 105. Plaintiff's neck pain is his worst problem. Tr. 98. He has constant numbness or tingling that extends from his neck to his fingers. Tr. 102-03. He takes Percocet for pain. Tr. 97. Medication helps but does not "bring the pain down to where . . . I can even be comfortable." Tr. 98. According to Plaintiff, neck x-rays indicate that "one of the screws is broken and it looks like one is backing out." Tr. 99. He also experiences back pain that is worsened by sitting too long. Tr. 99-100. The back pain is a burning pain that extends into his legs. He also experiences muscle spasms and cramps. Tr. 101. Plaintiff also experiences intense migraine headaches 2-3 times per month. Tr. 102. In addition, he has bilateral carpal tunnel syndrome; as a result, he must be careful when he lifts items. Tr. 103. His sleep apnea requires the use of a CPAP machine. *Id*. On a typical day, Plaintiff testified, he must lie down 3-4 times because of pain. Tr. 95. He can walk 5-10 minutes on a flat surface before having to sit down. Tr. 96. He can stand for 5-10 minutes before having to change positions. *Id.* He can sit for 15-20 minutes before experiencing back pain. *Id.* He can lift and carry a

5

gallon of milk or a 2-liter bottle of pop. *Id.*

The vocational expert was asked to assume a claimant with Plaintiff's vocational profile and the residual functional capacity ("RFC") for a reduced range of sedentary work, as ultimately found by the ALJ. In response, the vocational expert testified that, although such a claimant could not perform Plaintiff's past relevant work as an area supervisor - area chain store, the claimant could perform work that exists in significant numbers in the economy, including such jobs as hand packer, Tr. 109-11, small products inspector, Tr. 110-11, and production assembler. *Id*. Asked to credit Plaintiff's subjective complaints regarding pain and a need to lie down throughout the day, the vocational expert testified that such a claimant would be "unemployable." Tr. 112.

Chris Sewell, M.D., has been Plaintiff's primary care physician and has treated Plaintiff for, *inter alia*, neck and back pain, migraine type headaches, and sleep disturbances. A June 2012 MRI showed degenerative disc disease at C-5/C-6 and C-6/C-7 and "severe spinal stenosis." Tr. 508.

Scott Hodges, D.O., performed a right-sided hemilaminotomy and foraminotomy at C5-6 and C6-7 in June 2012 and a left-sided foraminotomy at C5-6 and C6-7, with disk fusion at C5 to C7 in December 2012. Tr. 345, 335. Within weeks, however, Plaintiff complained of neck and bilateral shoulder pain, and low back pain. *See* Tr. 457. X-rays of the cervical spine showed that the hardware was in good position at that time. Tr. 464.

In the months following Plaintiff's surgeries, Dr. Sewell saw

6

Plaintiff monthly for medication refills. Plaintiff continued to complain of neck and back pain and bilateral knee pain. Tr. 502-03. Dr. Sewell noted good grip strength in the upper extremities. Tr. 506. An x-ray of the lumbar spine was "fairly unremarkable." Tr. 503.

A March 2013 EMG/NCV performed by Abdul H. Eletr, M.D., and administered in connection with Plaintiff's complaint of neck pain radiating to the upper extremities was read as suggestive of right C5 and C7 cervical radiculopathy, left C5 cervical radiculopathy, and bilateral moderate-severe carpal tunnel syndrome with abnormal median motor and sensory nerve conduction. Tr. 433-34. *See also* Tr. 452.[2]

In April 2013, Dr. Hodges saw Plaintiff for complaints of bilateral arm numbness and tingling, back pain, bilateral leg numbness and tingling, and bilateral foot burning. Tr. 445. On clinical examination, Dr. Hodges noted a normal gait, negative Waddell signs, negative sitting straight leg raising bilaterally, 5/5 motor strength for the upper and lower extremities, and 2/4 deep tendon reflexes for the upper extremities bilaterally. *Id.* An MRI of the cervical spine confirmed the prior surgery and showed indentation of the ventral thecal sac at C5-6, with minimal deformity, and spondylosis. Tr. 446. Later that same month, Dr. Hodges noted brachioradialis reflexes were 3/4 for the bilateral upper extremities. Tr. 452. Dr. Hodges diagnosed status post anterior cervical discectomy fusion at C5-C7, and "C5-C7 radiculopathy/worsening – early myelopathy." *Id*.

On April 30, 2013, Dr. Hodges completed a "Work Slip," directing

---

[2] Dr. Sewell's office notes indicate that this EMG "showed no evidence of significant carpal tunnel or cubical tunnel." Tr. 503. *See also* Tr. 449.

7

that Plaintiff be "off work permanently." Tr. 495.

An April 2013 EMG/NCV, administered in connection with Plaintiff's complaints of back pain radiating to the lower extremities, showed "bilateral S1 lumbar radiculopathy (right worse than left)." Tr. 429. There was no evidence of peripheral neuropathy. *Id*. An MRI taken that same month and in response to Plaintiff's complaint of pain radiating to the legs showed "mild bulging disc" at L1-2, L3-4, L4-5, and L5-S1. Tr. 424. There was no disc herniation, spinal stenosis, or significant neural compromise. *Id*.

In May 2013, Plaintiff reported to Dr. Sewell that his neck pain since his cervical surgery "is still pretty severe." Tr. 501. Dr. Sewell also noted complaints of knee pain, back pain, and migraine headaches. *Id*.

Plaintiff returned to Dr. Hodges later that same month with complaints of bilateral arm pain, back pain, bilateral leg pain, numbness and tingling and weakness and bilateral foot pain. Tr. 445. Plaintiff reported that his pain is intensified by sitting and is diminished by changing positions. Percocet was "effective in controlling his pain." *Id*. On clinical examination, Dr. Hodges noted a normal gait, negative Waddell signs, negative sitting straight leg raising test bilaterally, and 5/5 motor strength bilaterally in the upper and lower extremities. Tr. 442. Dr. Hodges diagnosed L2-S1 discogenic low back pain and bilateral S1 radiculopathy. Tr. 443. He prescribed medication and commented, "Patient will need to be off work permanently." *Id*. Dr. Hodges reaffirmed this opinion in April 2015. Tr. 618.

8

Plaintiff's complaints of pain continued in June 2013. Tr. 524. In July 2013, Dr. Sewell noted "weakness and calf asymmetry on the left side and some knee pain." Tr. 523. At office visits in August, September, and October 2013, Plaintiff complained of constant pain and stiffness of the neck, which began following his surgeries and which is worsened by physical activity or rotation. Tr. 528, 534. Medication and lying down alleviate, but do not control, the pain. Tr. 528; Tr. 530. On clinical examination, Dr. Sewell noted normal gait and station and body movements, normal neck muscle strength and tone, and no abnormality or tenderness to palpation of the neck and shoulders. Tr. 529; 534. There was no visible or palpable abnormality in the upper or lower extremities. Id. Muscle strength in all extremities was 5/5. *Id*. Range of motion of the thoracic and lumbar spine was normal. There was no numbness, pain, or weakness in the legs. *Id.* Reflexes were equal and symmetric bilaterally, and sensory examination was within normal limits, as was coordination. Tr. 529; 535.

In July 2013, James Gregory, M.D., a state agency reviewing physician, found that the record documented diagnoses of degenerative disc disease of the back and neck, radiculopathy of the lumbar spine, sleep apnea, migraine headaches, and obesity. Tr. 123. According to Dr. Gregory, Plaintiff has the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand/walk for a total of 4 hours, and to sit for a total of 6 hours. Tr. 121. His ability to push and pull was unlimited. *Id*. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but could never climb ladders. Tr. 122. He has no manipulative limitations. *Id.*

9

In October 2013, Deborah Webster-Clair, M.D., another state agency reviewing physician, concluded that the record documented disorders of the back – discogenic and degenerative, other and unspecified arthropathies, hearing loss, sleep-related breathing disorders, essential hypertension, migraine headaches, hyperlipidemia, and obesity. Tr. 132. However, those impairments neither met nor equaled a listed impairment, including Listing 1.04. *Id.* According to Dr. Webster-Clair, Plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk for a total of 6 hours, and sit for a total of 6 hours in an 8-hour workday. Tr. 133-34. Plaintiff's ability to push/pull was unlimited. Tr. 134. He could occasionally climb stairs or ramps, balance, stoop, kneel, crouch and crawl; he could never climb ladders. *Id*. He was unlimited in his ability to reach but his ability to handle and finger with both hands was limited to frequent. Tr. 134-35.

Beginning in the latter months of 2013, Dr. Sewell noted mild atrophy in the calf muscles and pain in the lumbar paraspinal muscles. Plaintiff reported numbness or tingling down the right leg, as well as neck pain and calf pain. Tr. 542-43. Range of motion in the lumbar spine was abnormal with pain on flexion and weakness of the legs, although muscle strength remained 5/5. Tr. 538; 546; 559. Dr. Sewell diagnosed degenerative disc disease of the lumbar and sacral spine, neck pain and general osteoarthrosis involving multiple sites. Tr. 539; 547. There was no complaint of migraine headaches. Tr. 546; 550; 554; 558; 565. In March 2014, Dr. Sewell noted that Plaintiff's gait and station were abnormal, Tr. 562, although gait and station were

10

found to be normal once again in later months through March 2015. Tr. 565, 568, 606.

An April 2015 MRI of the cervical spine revealed a C4-C5 midline central bulging disc, narrowing of the central canal with mild right neural foraminal stenosis, and a C5-C6 right paramedian asymmetrical disc narrowing of the central canal without significant encroachment on the neural foramina. Tr. 613.

Dr. Hodges saw Plaintiff again in April 2015, after a two-year lapse. Tr. 623. Plaintiff continued to complain of cervical and lumbar pain and headaches. *Id*. On clinical examination, Dr. Hodges noted negative Waddell signs, bilateral negative straight leg raising from a sitting position, and 5/5 motor strength bilaterally in the upper and lower extremities. Tr. 624. Dr. Hodges diagnosed "status post ACDF C5-7 with broken hardware C7." *Id*. At Plaintiff's next office visit, in May 2015, Plaintiff reported that Percocet is effective in controlling his pain. Tr. 625. Dr. Hodges made no further mention of "broken hardware," but stated, "I support the need for disability." Tr. 626.

Dr. Hodges also completed a medical source statement in April 2015, in which he opined that Plaintiff could only occasionally lift and carry 10 pounds and could frequently lift and carry less than 10 pounds. Tr. 608. Plaintiff could stand/walk less than 2 hours in an 8-hour workday, *id*., and could sit less than about 6 hours in an 8-hour workday. Tr. 609. Plaintiff's ability to push and pull would be limited in his upper extremities as a result of the C5-C7 fusion. *Id*. He could frequently climb ramps and ladders, could occasionally balance, kneel, and stoop, but could never crouch or crawl. *Id*. He

11

could only occasionally reach, but could constantly handle, finger, and feel. Tr. 610. Plaintiff had no environmental limitations. Tr. 611.

Plaintiff's medical treatment continued after the ALJ rendered his unfavorable decision in July 2015. Khan W. Li, M.D., a neurosurgeon, first saw Plaintiff in December 2015 for complaints of neck and low back pain and numbness in the upper and lower extremities. Tr. 9. On clinical examination, Plaintiff's gait and station were normal and inspection of the upper and lower extremities was unremarkable. Tr. 10. Range of motion of the neck was decreased in all directions. *Id.* Dr. Li reviewed Plaintiff's medical records, including x-ray studies, which showed "a solid fusion across C5-6 with broken hardware across C6-7. The screws are broken and the plate remains intact." Tr. 11. Dr. Li saw Plaintiff again in February 2016 following a CT scan of the cervical spine, which showed "evidence of a pseudoarthrosis at C5-6 and C6-7 with incomplete incorporation of the bone [graft]. There is also loosening of the screws at C5 and broken screws at C7." Tr. 13. Dr. Li diagnosed cervical degenerative disk disease, pseudoarthrosis of the cervical spine, hardware malfunction, and cervical radiculopathy. Tr. 21. In April 2016, Dr. Li performed a surgical revision of Dr. Hodges' ACDR at C5-7, including removal of broken hardware and a partial corpectomy at C6, followed the next day by a posterior instrumentation fixation at C5-C7 with lateral mass screws. Tr. 14, 18, 21, 24, 35. At his follow-up appointment later that month, Plaintiff rated his pain as 4 on a 10-point scale. Tr. 32.

**Remand for Consideration of New and Material Evidence**

When the Appeals Council denies a claimant's request for review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secy. of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citing 20 C.F.R. § 404.955). Under such circumstances, a court called upon to review the final decision of the Commissioner is confined to a review of the ALJ's decision and the evidence presented to the ALJ. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). A District Court has no authority to review the decision of the Appeals Council. *Elliott v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002)(citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). However, a District Court may remand the case for further administrative proceedings, pursuant to Sentence 6 of 42 U.S.C. § 405(g), in light of new and material evidence upon a showing of good cause for not presenting that evidence in the prior proceeding. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016).

Under 42 U.S.C. §405(g),

> [t]he court. . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . .

Evidence is "new," for purposes of this provision, only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990). Evidence is "material" only if there is "'a reasonable

13

probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483-84 (6th Cir. 2006)(quoting *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001))*.* S*ee also Faucher v. Sec'y of Health & Human Servs*., 17 F.3d 171, 174 (6th Cir. 1994). Moreover, a plaintiff must establish good cause for the failure to incorporate the new and material evidence into the prior proceeding. *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (6th Cir. 1984). A plaintiff may do so by demonstrating a reasonable justification for the failure to acquire and present the evidence at the administrative hearing. *Foster,* 279 F.3d at 357*.* This standard also applies to evidence submitted for the first time to the Appeals Council*. Cline,* 96 F.3d at 148.

The medical evidence presented by Plaintiff to the Appeals Council and which is now before this Court is indisputably new, for purposes of Sentence 6, because it was generated after the administrative decision and was "not in existence or available to the claimant at the time of the administrative proceeding." *See Sullivan,* 496 U.S. at 626. For this same reason, Plaintiff can establish good cause for the failure to incorporate this evidence into the proceedings before the ALJ.

Moreover, this new medical evidence is material because there is "'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" *See Hollon,* 447 F.3d at 483-84. Diagnostic tests reviewed and ordered by Dr. Li confirmed the existence of broken

14

hardware across C6-7. Tr. 11. As noted *supra,* Plaintiff referred to a "broken" screw in his neck when he testified about his neck pain. Tr. 99. In his evaluation of the medical evidence and in discounting the credibility of Plaintiff's subjective complaints of pain in light of the objective clinical findings, the ALJ acknowledged this testimony and "an actual photograph of the cervical spine" that was included in the record. Tr. 76. However, the ALJ apparently assigned little weight to that evidence because "there is no radiologist or doctor's interpretation of the pictures, and I am not a radiologist." *Id.*[3] There is a reasonable probability that the ALJ would have evaluated the medical evidence and Plaintiff's credibility differently had Dr. Li's confirmation of the broken hardware – and his surgical revision of Dr. Hodges' ACDR at C5-7, including removal of broken hardware – been before the ALJ.

Under all these circumstances, the undersigned concludes that remand of the action to the Commissioner for further consideration of this new and material evidence is warranted.

### Recommendation

In light of the foregoing, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. 12) be **GRANTED** and that the matter be **REMANDED** to the Commissioner, pursuant to Sentence 6 of 42 U.S.C. § 405(g), for consideration of new and material evidence.

### Procedure on Objections

If any party seeks review by the District Judge of this Report

---

[3] The ALJ made no mention in his decision of Dr. Hodges' April 2015 reference to "broken hardware." Tr. 624.

15

and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for the objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)). Filing only "vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 F. App'x 561, 561 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

*s/Norah McCann King*
Norah M$^c$Cann King
United States Magistrate Judge

October 31, 2017

16

Case 2:16-cv-00054   Document 16   Filed 10/31/17   Page 16 of 16 PageID #: 720